**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JAMES TANNEHILL, II and** | ) | |
| **ROBYN L. TANNEHILL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | **2:06-CV-935-VEH-RRA** |
| | ) | |
| | ) | |
| **JAMES L. MCELROY, JR. and** | ) | |
| **MCELROY LAND SURVEYING** | ) | |
| **COMPANY, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

This is a civil action filed by the plaintiffs, James Tannehill, II and Robyn L. Tannehill, against the defendants, James L. McElroy, Jr., McElroy Land Surveying Company, Inc., Matthew Danner, and Madison County, Alabama.  The plaintiffs' complaint, filed on May 12, 2006, alleged professional negligence (count one), negligent misrepresentation (count two), fraudulent misrepresentation (count three), and making a false statement in violation of 18 U.S.C. § 1001 (count four).  All counts arise out of land surveying services provided by defendants James L. McElroy, Jr., and McElroy Land Surveying Company, Inc. for the construction of a home located at 269 River Cove Road, Huntsville, Alabama 35811.

On April 5, 2007, the plaintiffs filed an amended complaint alleging professional negligence against James L. McElroy, Jr., and McElroy Land Surveying Company, Inc. (count one), negligent misrepresentation against James L. McElroy, Jr., and McElroy Land Surveying Company, Inc. (count

two), fraudulent misrepresentation against all defendants (count three), violation of the plaintiffs'
due process rights against Matthew Danner, and Madison County, Alabama (count four), civil
conspiracy against James L. McElroy, Jr., Matthew Danner, and Madison County, Alabama (count
five), and making a false statement in violation of 18 U.S.C. § 1001 against James L. McElroy, Jr.
and McElroy Land Surveying Company, Inc. (count six).

Presently before the court is the motion for summary judgment filed by James L. McElroy,
Jr., and McElroy Land Surveying Company, Inc.  (Doc. 34.)  It is undisputed that, in a prior state
court action filed in Alabama State Court, the Circuit Court of Madison County, Alabama, ruled that
the claims in that suit, against these defendants, were barred by the applicable statute of limitations.
The defendants contend that that decision bars the instant action as well.

## II.    STANDARD OF REVIEW

> In conducting [a summary judgment analysis], [the Court must] view all evidence
> and factual inferences in the light most favorable to the nonmoving party. *Id.* Summary
> judgment is proper where "there is no genuine issue as to any material fact" and "the moving
> party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, "the mere
> existence of *some* alleged factual dispute between the parties will not defeat an otherwise
> properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477
> U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only factual disputes that
> are material under the substantive law governing the case will preclude entry of summary
> judgment. *Id.*

*Lofton v. Secretary of Dept. of Children and Family Services,* 358 F.3d 804, 809 (11th Cir. 2004).

## III.    FACTS

On July 25, 2005, in an earlier filed state court action against the contractor, the County, and
the subsequent purchasers of the house, the plaintiffs filed a "Fourth Amended Complaint" *pro se.*
In that amended complaint the plaintiffs alleged:

Facts

7.   On or about the 18 day th of March, 2003, the Tannehills entered into a contractual agreement (hereinafter "the Agreement") with Harris for the purchase of real property (hereinafter "the Property) and the construction of a house.

8.   ... The House was to be completed and the purchase closed no later than October 30, 2003.

13.   Harris and the Madison County defendants further knowingly, intentionally, willfully, recklessly and/or negligently represented to the Tannehills that the Property was not in a flood plain or a flood hazard are. The Tannehills relied on this misrepresentation of a material fact when they made the decision to sign the Agreement. If the Tannehills had known that the Property was located in a flood plain or a flood hazard area, they would not have signed the agreement or agreed to purchase the Property.

15.   As Harris progressed on the construction of the House, it became apparent to the Tannehills in April and May of 2003 that, among other deviations from the plans, ... the elevation of the house were not being met. Specifically, the House was elevated approximately four feet higher off the ground than the plans and photographs incorporated in the Agreement specified. Also, the garage, which pursuant to the plans was supposed to be on the same level as the main floor of the House, was instead located approximately four feet (6 steps) lower than the main floor of the House.

16.   These deviation from the plans were substantial and material, and constituted defaults by Harris on the Agreement. On May 27, 2003, the Tannehills gave Harris written notice of its default and breach of the Agreement ... since that demand was made Harris has not only failed to correct or otherwise cure its breaches of the Agreement, but has continued construction of the House knowing that the garage slab was four feet lower than the main level of the House, and that the foundation of the House was approximately four feet higher than the plans called for.[1]

In the order dismissing the state court action against the County, Judge Williams found:

[T]herefore, their causes of action for negligence and violation of the FDPO accrued by May 2003, the date by which the injury had both occurred and been discovered by Plaintiffs. .... It is therefore ORDERED, ADJUDGED AND DECREED BY THE COURT as follows:

2. That the County Defendants' Motion to Dismiss is hereby GRANTED and that this action be and the same is hereby DISMISSED as it relates to the County Defendants with costs taxed as paid.

---

[1]This quote is from the defendants motion, and, because it is not disputed, is quoted verbatim. The apparent misnumbering is original to the quote in the motion.

DONE this the 18th day of January, 2006.

(Circuit Ct. Order 9.)

The pertinent allegations of the amended complaint in this action are as follows:

FACTS

7.      The Madison County Commission, of Madison County, Alabama, adopted a Madison County Flood Damage Prevention Ordinance (FDPO), February 26, 1988, and amended same in 1992 making a technical correction to correct statutory citation. The 1988 Ordinance, as amended, is the only Ordinance lawfully adopted by Madison County pursuant to Section 11-19-3, Code of Alabama, 1975 and as such is the controlling authority in county flood control and mitigation matters.  The Ordinance, at Article 4, Section A, designates and appoints the "Madison County Engineer" as the sole Madison County official to "administer and implement the provisions" thereof. The Madison County Flood Damage Prevention Ordinance of 1988 makes no provision for the delegation or redesignation of responsibility or authority for administration and implementation of the Ordinance.

8.      Matthew Danner, although an employee of Madison County, is not the Madison County Engineer, but has assumed responsibility for the administration and implementation of the Ordinance. In so doing Danner has made and/or influenced decisions affecting the Property in which Plaintiffs have a contractual interest. Said decisions involve land use and control measures as defined in Section 11-19-1, Code of Alabama, 1975, which are an extension of Madison County police powers to provide standards of occupancy for prudent use of property in flood prone areas.

9.      Sometime during the period March 18, 2003 through May 28, 2003, Defendants James L. McElroy, Jr. and McElroy Land Surveying Company, Inc. (hereinafter referred to jointly as "McElroy") were engaged by Mark Harris Homes, LLC (the "Homebuilder") to provide certain land surveying services in conjunction with the construction of a home (the "Home") located at 269 River Cove Road, Huntsville,  Alabama 35811, also known as Lot 4, Block 1 of River Run II, of Mt. Carmel by the River, recorded in Plat Book 36 at Page 63 in the Office of the Judge of Probate, Madison County, Alabama (the "Property").

10.     Among the services provide by McElroy were the establishment of certain elevations relative to mean sea level and the completion and certification of an "Elevation Certificate" in accordance with the rules and regulations for completing said certificate established by the Federal Emergency Management Agency (FEMA), the National Flood Insurance Program (NFIP), and Title 18, UnitedStates Code, Section 1001.

11.     At the time of undertaking the survey work McElroy knew the Homebuilder to be in the residential construction business and it was reasonably foreseeable that the survey work would be relied upon by not only the Homebuilder but also by third parties such as insurance companies and future homebuyers. In fact, at the time McElroy performed the services described, Plaintiffs were under a construction and purchase contract with the

4

Homebuilder, for the construction of the Home and the purchase of the Property described in Number 9, above.

12.     As a direct result of the surveying services provided by McElroy (the Elevation Certificate and certification thereon), the Homebuilder, Defendant Madison County, Alabama (the "County"), and Defendant Matthew Danner ("Danner"), made certain decisions regarding the Home and the Property. These decision, among others, include: whether or not the Home (the building structure) was in or out of a Special Flood Hazard Area (SAHA) as developed by FEMA, NFIP and the County; whether or not the Home was compliant or non-compliant with the County's FDPO; whether or not special "flood vents" would need to be installed in the Home (flood vents that were a violation of the contract between Plaintiffs and the Homebuilder); and whether or not other provisions of the contract between Plaintiffs and the Homebuilder had been violated thereby rendering the Home and the Property unsuitable for Plaintiffs' purposes as contemplated and contracted for.

13.     Plaintiffs notified the Homebuilder of the apparent breaches in the construction contract pertaining to the floor elevations relative to the flood plain and non-conforming entry levels of the main floor and garage entrance. On or about August of 2003, the Homebuilder breached his contract with Plaintiffs by refusing to cure these defects in the construction of the home on the Property. As a result of that breach, Plaintiffs filed an action for breach of contract and other remedies in Madison County, Alabama, Circuit Court against the Homebuilder and other defendants. That action is still on-going and does not involve the present Defendants, James L. McElroy, Jr. and McElroy Land Surveying Company, Inc., or Madison County, Alabama, or Matthew Danner.

14.     On or about May 14, 2004, McElroy [sic] were again engaged to provide certain land surveying services for the determination of elevations of the floors of the Home and the Property relative to mean sea level and to complete and certify another "Elevation Certificate" in accordance with the rules and regulations for completing said certificate established by FEMA, NFIP, the County, and Title 18, United States Code, Section 1001.

15.     Defendants second "Elevation Certificate" issued on or about May 14, 2004, is substantially and materially different from the first "Elevation Certificate" provided on or about May 28, 2003. Significantly, the minimum floor elevation of the basement is shown to be nearly three (3) feet higher than previously reported in 2003. In addition, the building type "Building Diagram Number" is incorrectly described and the Home (the building structure) is incorrectly described as being in an E Zone, (in a flood hazard zone). These and other inconsistencies are material and significant. When compared side by side, the two elevation certificates are patently ambiguous and support Plaintiffs' claims, enumerated below, of Professional Negligence, Negligent Misrepresentation, Fraudulent Misrepresentation, and Making False Statements in Violation of Title 18, United States Code, Section 1001.

16.     In August of 2004 Plaintiff [sic], shortly after these irregularities came to the attention of Plaintiffs, James Tannehill, accompanied by his former counsel, met with Defendant, James L. McElroy, Jr., at his office to discuss these elevation certificate irregularities. Defendant disclaimed any knowledge of the reason for the irregularities or

5

responsibility for same, attributing them to the work of a former employee.

17.     On or about May 4, 2006, Plaintiffs commissioned their own survey of the Property to determine the elevations of the floors of the Home and on the Property relative to mean sea level, to determine if the Home (the building structure) is within any Special Flood Hazard Area, as previously described. The results of that survey indicate that the bottom floor elevation of the enclosed walk-out basement was even higher than either of the elevation certifications made by McElroy.  Plaintiffs' survey indicates that the bottom floor of the home on the property is over three and one-half (3-1/2) feet higher than the minimum floor elevation established by locale [sic], state and federal regulations. In addition, Plaintiffs' survey indicates that the Home (the building structure) is not within any Special Flood Hazard Area. In other words, the Home on the Property could have been built in compliance with all applicable local, state and federal regulations pertaining to FEMA and NFIP flood hazard areas. In addition, the Homebuilder could have cured the defects in the Home and not breached the construction and sales contract with Plaintiffs, thereby avoiding possible litigation in this matter.

18.     In depositions given by McElroy on February 21, 2007, the County (Madison County, Alabama) and Danner (Matthew Danner) were implicated as coconspirators in civil conspiracy to circumvent and violate the FEMA and NFIP rules and regulations, and the County's FDPO; to fraudulently misrepresent the FEMA/NFIP Elevation Certificate; and to falsify a Federal Document in violation of 18 U.S Code, Section 1001.

19.     In 2004, James Tannehill and former counsel Patrick Miller personally met with Madison County official and counsel, and confronted them with what appeared to be significant irregularities, as described above. These Madison County representatives, declined to produce a copy of the FDPO, denied that plaintiffs had any rights under the FDPO and represented that the Home was properly identified as being in a SAHA requiring the imposition of extraordinary flood mitigation measures.

20.     The FDPO, as described in Number 7, above, has since been judicially notice [sic] in Madison County Circuit Court, by Judge Bruce Williams, on January 23, 2007.

. . . .

## Count I – Professional Negligence

21.     Plaintiffs hereby incorporate and adopt paragraphs 1 through 20, above, as if fully set out herein.

22.     The conduct of Defendant James L. McElroy, Jr., in his individual, corporate and professional capacities, constitutes professional negligence. Defendant's negligence was the direct cause of Plaintiffs' damages.

23.     The conduct of Defendant McElroy Land Surveying Company, Inc., in its corporate capacity, constitutes professional negligence. Defendant's negligence was the direct cause of Plaintiffs' damages.

Count II – Negligent Misrepresentation

24.     Plaintiffs hereby incorporate and adopt paragraphs 1 through 23, above, as if fully set out herein.

25.     Defendant James L. McElroy, Jr., in his individual, corporate and professional capacities, negligently misrepresented elevations and other data on a FEMA/NFIP Elevation Certificate, thereby causing damages to the Plaintiffs.

26.     Defendant McElroy Land Surveying Company, Inc., in its corporate capacity, negligently misrepresented elevations and other data on a FEMA/NFIP Elevation Certificate, thereby causing damages to the Plaintiffs.

Count III – Fraudulent Misrepresentation

27.     Plaintiffs hereby incorporate and adopt paragraphs 1 through 26, above, as if fully set out herein.

28.     The Alabama Court of Civil Appeals in the case of Bryant et al v. Robledo, 2005 Ala. Civ. App. LEXIS 359, 21 (Ala.Civ.App. 2005), articulated the elements of fraud, quoting the Alabama Supreme Court: "The Bryants correctly note that four elements must be proven in a fraud action: (1) false representation, (2) as to a material fact, (3) reliance on that representation, and (4) damage resulting from the reliance. Crowne Invs., Inc. v. Bryant, 638 So. 2d 873, 876-77 (Ala. 1994)."

29.     On or about May 28, 2003, and again on May 14, 2004, Defendant James L. McElroy, Jr., in his individual, corporate and professional capacities, fraudulently misrepresented certain information on the FEMA/NFIP (Federal Emergency Management Agency/National Flood Insurance Program) "Elevation Certificate" (the "Certificate"). The Certificate was a false statement about the true conditions of the floor elevations, the type of building (Building Diagram Number), the location of the Home (the building structure) with relation to the flood zone boundary, and the source benchmark used to determine the elevations of the floors and the flood zone. Defendant issued the Certificate knowing that others would rely upon the information contained within the document for all manner of purposes, including but not limited to: compliance with local, state and federal flood damage prevention regulations; compliance with construction contracts; obtaining flood insurance coverage; and due diligence on the part of potential purchasers of property as to the true conditions of the property relative to flood hazard issues. Such a Certificate cannot possibly be issued without the requisite intent for others to rely on the information contained therein. As a result of Defendant's fraudulent misrepresentations made with the intent for others to act thereon, Plaintiffs and others relied upon these misrepresentations and were thereby induced to act to their detriment. As a direct result of Defendant's actions, Plaintiffs have been damaged.

30.     On or about May 28, 2003, and again on May 14, 2004, Defendant McElroy Land Surveying Company, Inc., in its corporate capacity, fraudulently misrepresented certain information on the FEMA/NFIP Certificate. The Certificate was a false statement about the

true conditions of the floor elevations, the type of building (Building Diagram Number), the location of the building (the home) with relation to the flood zone boundary, and the source benchmark used to determine the elevations of the floors and the flood zone. Defendant issued the Certificate knowing that others would rely upon the information contained within the document for all manner of purposes, including but not limited to: compliance with local, state and federal flood damage prevention regulations; compliance with construction contracts; obtaining flood insurance coverage; and due diligence on the part of potential purchasers of property as to the true conditions of the property relative to flood hazard issues. Such a Certificate cannot possibly be issued without the requisite intent for others to rely on the information contained therein. As a result of Defendant's fraudulent misrepresentations made with the intent for others to act thereon, Plaintiffs and others relied upon these misrepresentations and were thereby induced to act to their detriment. As a direct result of Defendant's actions, Plaintiffs have been damaged.

31.     During the deposition of Defendant McElroy, given on February 21, 2007, testimony was given to the effect that at the time of the issuance of the above described Elevation Certificates, the County and Danner were regularly instructing land surveyors in Madison County to falsify Elevation Certificates in violation of the FEMA/NFIP rules and regulations. In particular, to falsify Section B, Item B8, thereby placing buildings within a flood zone, when in fact they are not. Defendant  McElroy blamed the County and Danner for forcing McElroy to falsify this information on the two Elevation Certificates discussed above. This constitutes a false representation as to a material fact, Plaintiffs went into reliance on this misrepresentation to their detriment and damage.

32.     On or about August 27, 2004, Defendant County fraudulently concealed from and misrepresented to plaintiff, James Tannehill, that the Madison County FDOP in effect during the period of March 2003 through August 2004 afforded Plaintiffs no right to notice or any other substantive rights with regard to their standing as potential home buyers interested in knowing of the flood hazard associated with their purchase of a Home in Madison County, that are not, in fact, within the flood zone. In addition, County Defendant fraudulently misrepresented that the Home was in a SAHA and required flood vents knowing of the lawsuit Plaintiffs had on-going with the Homebuilder. This constitutes false representations as to material facts, Plaintiffs went into reliance on these misrepresentation to their detriment and damage.

33.     During March of 2005, Defendant County, through attorney Jeffery Rich, fraudulently represented and passed off on Plaintiffs, through Plaintiffs' former attorney Patrick Miller, a bogus, unsigned, unauthenticated and undated document purporting to be the controlling Madison County Flood Damage Prevention Ordinance, superceding the legally adopted Ordinance of 1988 as technically amended in 1992 to correct erroneous citation as to statutory authority (See Number 7, above). Such fraudulent misrepresentation continues through the present date. This constitutes a false representation as to a material fact, Plaintiffs and their counsel went into reliance on this misrepresentation to their detriment and damage.

. . . .

8

Count V – Civil Conspiracy

36.     Plaintiffs hereby incorporate and adopt paragraphs 1 through 35, above, as if fully set out herein.

37.     Defendants Madison County, Matthew Danner and McElroy (corporate and individually) conspired and cooperated in circumventing and violating the FEMA/NFIP and Madison County Flood Damage Prevention Ordinance requirements so as to cause the Home at 269 River Cove Road, Huntsville, Alabama 35811, to be falsely subjected to SAHA floodplain [sic] standards and thereby rendered unsuitable for its intended and contracted business and occupancy purposes. By such conspiracy, Plaintiffs have been damaged.

(Amended Compl. 2-9.)

## IV.   ANALYSIS

The only evidence the defendants submit in support of their motion is the complaint and order on summary judgment in the state court action.   Accordingly, to the extent this motion succeeds at all it must do so on either a collateral estoppel or res judicata theory.   However, the defendants fail to specifically argue either theory in support of their motion.

> Courts are not obligated to read a party's mind or to construct arguments that it has failed to raise and that are not reasonably presented in the court file. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it ...."); *see also Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir.1999) (declaring that a "party who aspires to oppose a ... motion must spell out his arguments squarely and distinctly, or else forever hold his peace," as district court may ignore arguments not adequately developed by nonmovant). Clearly, "the onus is upon the parties to formulate arguments." *Resolution Trust*, 43 F.3d at 599; *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F.Supp.2d 1228, 1236 (M.D.Ala.2000) ("It is not for the court to manufacture arguments on Plaintiff's behalf."). Accordingly, plaintiff's decision not to respond to the Motion is at her peril.

*Williams v. Quality Filters, Inc.*, No. 07-0015-WS-B, 2007 WL 4219201, *1 (S.D. Ala., November 27, 2007).

Be that as it may, the court reviews, to the extent possible, the application of the doctrines

of collateral estoppel and res judicata.

> [C]ollateral estoppel bars relitigation of an issue that has previously been litigated and resolved. "To claim the benefit of collateral estoppel the party relying on the doctrine must show that: (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir.1998).

*Abele v. Tolbert*, 241 Fed. Appx. 612, *615 (11th Cir. 2007).

The defendants do not allege, or provide any evidence in support of, which issue they contend is the same in both cases. It is true that both suits involve *inter alia* claims for fraudulent misrepresentation, negligent misrepresentation, and civil conspiracy. Further, the court in the state court case determined that the statute of limitations as to these claims had expired *as to the "County Defendants"*. While it is true that the application of collateral estoppel does not require identity of parties, the issues *must* be identical. *Id.*

The statute of limitations as to the plaintiffs' claims for fraudulent misrepresentation, negligent misrepresentation, and civil conspiracy is two years. *Ala. Code* § 6-2-38 (1975). Alabama law provides that the statutory limitations period as to tort claims begins to run when the cause of action accrues. *See Jackson v. Secor Bank*, 646 So. 2d 1377, 1379 (Ala. 1994). A fraud claim accrues under Alabama law "when there are discovered such facts as would put a reasonable person on inquiry which, if pursued, would lead to the discovery of the fraud." *Faith, Hope & Love, Inc. v. First Alabama Bank*, 496 So. 2d 708, 713 (Ala. 1986). The state court's determination that May 2003 was "the date by which the injury had both occurred and been discovered by [p]laintiffs" (Cir. Ct. Order 8-9) was based on the particular facts as alleged *against the "County Defendants."*.

10

The defendants make no showing that the same facts that would have lead to the discovery of the fraud alleged against the county defendants would have led to the discovery of the fraud alleged against themselves.  Even if they had made such a showing, the order in question does not *decide* when the plaintiffs discovered the fraud alleged against these defendants, nor does it decide when the plaintiffs were injured by these defendants.  Accordingly, collateral estoppel does not apply.

> The doctrine of res judicata bars a subsequent action if the following four elements are present: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir.2003).

*Smith v. Mercer*, No. 07-13101, 2008 WL 508643, * 1 (11th Cir., February 27, 2008).  Here, the parties in each suit are not identical.  The defendants in the instant case were not sued in the state court action.  Any judgment rendered in that action does not have res judicata effect on the instant suit.  Additionally, without some showing by these defendants that the issues were identical, the judgment rendered in the state court action does not invoke the protection of collateral estoppel.[2]

Accordingly, the Motion for Summary Judgment is due to be and is hereby **DENIED**.

**DONE** this the 27th day of March, 2008.

*[signature]*

**VIRGINIA EMERSON HOPKINS**
United States District Judge

_____

[2]The court is not saying that the issues were not identical.  The court is saying that these defendants have not shown that the issues were identical.

11