FILED
2009 Oct-15  PM 05:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES TANNEHILL, II and** | ) | |
| **ROBYN L. TANNEHILL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | **2:06-CV-935-VEH-RRA** |
| | ) | |
| | ) | |
| **JAMES L. MCELROY, JR. and** | ) | |
| **MCELROY LAND SURVEYING** | ) | |
| **COMPANY, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

This is a civil action originally filed on May 16, 2006, by the plaintiffs, James

Tannehill, II and Robyn L. Tannehill, against the original defendants, James L.

McElroy, Jr., McElroy Land Surveying Company, Inc. (Doc. 1.)  All counts arise out

of land surveying services provided by defendants James L. McElroy, Jr., and

McElroy Land Surveying Company, Inc. for the construction of a home located at 269

River Cove Road, Huntsville, Alabama 35811.

On April 5, 2007, the plaintiff filed a First Amended Complaint which added

defendants Madison County, Alabama, and Matthew Danner.  (Doc. 20.)  The First

Amended Complaint alleges professional negligence against James L. McElroy, Jr.,

and McElroy Land Surveying Company, Inc. (Count One), negligent misrepresentation against James L. McElroy, Jr., and McElroy Land Surveying Company, Inc. (Count Two), fraudulent misrepresentation against all defendants (Count Three), violation of the plaintiffs' due process rights against Matthew Danner and Madison County, Alabama (Count Four), civil conspiracy against all defendants (Count Five), and making a false statement in violation of 18 U.S.C. § 1001 against James L. McElroy, Jr. and McElroy Land Surveying Company, Inc. (Count Six).

Presently before the court is the motion to dismiss filed by Matthew Danner and Madison County, Alabama (hereinafter referred to collectively as the "County Defendants"). (Doc. 73.)

## II.   STANDARD OF REVIEW

### A.   Motion to Dismiss Standard of Review

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6).  The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *as abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *see also* Fed. R. Civ. P. 8(a).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it

2

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 ( 2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In evaluating a motion to dismiss, the court assumes that all factual allegations set forth in the complaint are true, *see United States v. Gaubert*, 499 U.S. 315, 327 (1991), and construes all factual allegations in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).

Following the principles announced in *Twombly* and elaborated upon in

*Ashcroft*, the Court follows a two-pronged approach.  First, the Court begins by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," since "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 129 U.S. at 1950.  Assuming that a claim is supported by "well-pleaded factual allegations, a court should assume their veracity and determine whether they plausibly give rise to an entitlement to relief." *Id.*

B.    The Qualified Immunity Standard

Qualified immunity may be claimed by an individual defendant who is being sued personally for actions that he or she took while acting under color of state law. *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S. Ct. 2727, 2736, 73 L. Ed. 2d 396 (1982).[1]  Qualified immunity is a question of law to be decided by the court prior to trial.  It is designed to allow officials who are entitled to qualified immunity to avoid the expense and disruption of going to trial, and is not merely a defense to liability. *Ansley v. Heinrich,* 925 F.2d 1339, 1345 (11th Cir.1991).  The only person who is sued individually in this case is Danner.  Therefore, the court's analysis of the adequacy of plaintiffs' Amended Complaint under the qualified immunity standard

---

[1]  Thus, qualified immunity may be available to Danner, an individual, but it is not available to Madison County.

4

will be limited to the adequacy of the allegations against Danner individually.[2]

The Supreme Court has referred to the qualified immunity analysis as the "objective-reasonableness" test. *Harlow,* 457 U.S. at 815-19, 102 S. Ct. at 2736-39. Under this test, public officials performing discretionary functions which would objectively appear to be within the official's authority have qualified immunity if their challenged conduct did not violate a clearly established constitutional right of which a reasonable person would have known, given the circumstances and information possessed by the official at the time of the conduct. *Id.* at 818, 102 S. Ct. at 2738.

The objective-reasonableness test is a two part analysis. First, the defendant public official must prove that he was performing duties within the scope of his discretionary authority when the alleged violation occurred. *Hutton v. Strickland,* 919 F.2d 1531, 1537 (11th Cir.1990) (citations omitted). A government official may prove that he was acting within the scope of his authority by showing facts and circumstances that would indicate that his actions were part of his normal job duties and were taken in accordance with those duties. *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988); *Cronen v. Texas Dep't of Human Services,* 977 F.2d 934, 939 (5th

---

[2] The Amended Complaint does not specify whether Danner is sued in his individual or official capacity. Any allegations against Danner in his official capacity would be claims against the county, pursuant to respondeat superior, and the court deals with all claims against the county in other sections of this Memorandum Opinion. Therefore, the court assumes that all allegations against Danner are in his individual capacity only.

Cir.1992) ("An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity.").

Once the defendant proves that he was acting within his discretionary authority, the burden then shifts to the plaintiff to prove that the defendant did not act in good faith. *Hutton,* 919 F.2d at 1537. The plaintiff may meet this burden by establishing that "the defendant public official's actions 'violated clearly established constitutional law.'" *Id.* (citations omitted). The second prong of the objective-reasonableness test has two sub-parts. *Id.* at 1538. First, the court must find that the constitutional law in question was clearly established when the alleged violation occurred. *Id.* Second, the court must find that "there is a genuine issue of fact regarding the government official's engaging in conduct violative of the clearly established law." *Id.*

"Clearly established" means that "[t]he contours of the [violated] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987).

This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent. *Id.* (citations omitted). Under this standard, qualified immunity is available to protect "all but the

6

plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).

To defeat a qualified immunity defense, the plaintiff bears the burden of showing that the "legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, ... the law clearly proscribed the actions the defendant took." *Barts v. Joyner,* 865 F.2d 1187, 1190 (11th Cir.1989), *cert. denied,* 493 U.S. 831, 110 S. Ct. 101, 107 L. Ed. 2d 65 (1989) ( quoting *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S. Ct. 2806, 2816, 86 L. Ed. 2d 411 (1985)).  In determining whether the plaintiff meets this burden, the court is guided by the Eleventh Circuit's direction in *Nicholson v. Georgia Dep't of Human Resources,* 918 F.2d 145 (11th Cir.1990):

> In satisfying this burden, the plaintiff cannot point to sweeping propositions of law and simply posit that those propositions are applicable. Instead, the plaintiff must draw the court's attention toward a more particularized and fact-specific inquiry.  Under this inquiry, the plaintiff need not point to one or more cases that resolved the precise factual issues at issue in his or her case.  '[A]lthough the standard is fact-specific, it is not one of factual rigidity.'  Rather, the plaintiff need only show that there existed sufficient case law establishing the contours of his or her constitutional rights such that the unlawfulness of the defendant's conduct would have been apparent to a reasonable official in the same circumstances and possessing the same knowledge as the defendant.

*Id.* at 147 (citations omitted).

7

If the plaintiffs satisfy their initial burden and show that the rights that defendants' conduct allegedly violated were clearly established at the time of defendants' conduct, the court must then determine whether the plaintiffs have adduced evidence sufficient to create a genuine issue of fact as to whether defendants actually engaged in conduct that violated clearly established law. *Rich,* 841 F.2d at 1564; *see also Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d 1499, 1503 (11th Cir.1990). In this undertaking, the court must draw all inferences of fact in favor of the plaintiff when the plaintiff is the party opposing the motion. *Stewart,* 908 F.2d at 1503.

Thus, the court must determine whether Danner acted in a way that was clearly unconstitutional. In other words, the court must here decide if plaintiffs' Amended Complaint sufficiently alleges facts which, if true, could establish that Danner violated clearly established law.

C.    The Heightened Pleading Standard.

The heightened pleading standard only applies to individuals who are potentially protected by the defense of qualified immunity. *See*, *Swann v. Southern Health Partners, Inc.*, 388 F.3d 834, 837 (11th Cir. 2004), distinguishing, *inter alia*, *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359 (11th Cir. 1998), *Olandeinde v. City of Birmingham*, 963 F.2d 1481 (11th Cir. 1992) ("*Leatherman* [*v.*

*Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)] made it clear that any heightened pleading requirements in § 1983 actions against entities that cannot raise qualified immunity as a defense are improper.")  No party has cited to this court any binding case that long-standing Eleventh Circuit precedent that such heightened pleading requirements <u>are</u> proper in § 1983 cases against <u>individuals</u> who <u>can</u> raise qualified immunity as a defense, and the court has found none.  Thus, if Danner shows that he can raise qualified immunity as a defense, then the plaintiffs' allegations against him must meet the heightened pleading standard.  *See*, *Swann v. Southern Health Partners, Inc.*, 388 F.3d 834 and cases discussed therein.

## III.   ALLEGATIONS OF THE AMENDED COMPLAINT

The pertinent allegations of the amended complaint are as follows:

### FACTS

7.     The Madison County Commission, of Madison County, Alabama, adopted a Madison County Flood Damage Prevention Ordinance (FDPO), February 26, 1988, and amended same in 1992 making a technical correction to correct statutory citation. The 1988 Ordinance, as amended, is the only Ordinance lawfully adopted by Madison County pursuant to Section 11-19-3, Code of Alabama, 1975 and as such is the controlling authority in county flood control and mitigation matters. The Ordinance, at Article 4, Section A, designates and appoints the "Madison County Engineer" as the sole Madison County official to "administer and implement the provisions" thereof. The Madison County Flood Damage Prevention Ordinance of 1988 makes no

provision for the delegation or redesignation of responsibility or authority for administration and implementation of the Ordinance.

8.     Matthew Danner, although an employee of Madison County, is not the Madison County Engineer, but has assumed responsibility for the administration and implementation of the Ordinance. In so doing Danner has made and/or influenced decisions affecting the Property in which Plaintiffs have a contractual interest. Said decisions involve land use and control measures as defined in Section 11-19-1, Code of Alabama, 1975, which are an extension of Madison County police powers to provide standards of occupancy for prudent use of property in flood prone areas.

9.     Sometime during the period March 18, 2003 through May 28, 2003, Defendants James L. McElroy, Jr. and McElroy Land Surveying Company, Inc. (hereinafter referred to jointly as "McElroy") were engaged by Mark Harris Homes, LLC (the "Homebuilder") to provide certain land surveying services in conjunction with the construction of a home (the "Home") located at 269 River Cove Road, Huntsville, Alabama 35811, also known as Lot 4, Block 1 of River Run II, of Mt. Carmel by the River, recorded in Plat Book 36 at Page 63 in the Office of the Judge of Probate, Madison County, Alabama (the "Property").

10.     Among the services provided by McElroy were the establishment of certain elevations relative to mean sea level and the completion and certification of an "Elevation Certificate" in accordance with the rules and regulations for completing said certificate established by the Federal Emergency Management Agency (FEMA), the National Flood Insurance Program (NFIP), and Title 18, United States C ode, Section 1001.

11.     At the time of undertaking the survey work McElroy knew the Homebuilder to be in the residential construction business and it was reasonably foreseeable that the survey work would be relied upon by not only the Homebuilder but also by third parties such as insurance companies and future homebuyers. In fact, at the time McElroy performed the services described, Plaintiffs were under a construction and purchase contract with the Homebuilder, for the construction of the Home and the purchase of the Property described in Number 9, above.

12.     As a direct result of the surveying services provided by McElroy (the Elevation Certificate and certification thereon), the Homebuilder, Defendant Madison County, Alabama (the "County"), and Defendant Matthew Danner ("Danner"), made certain decisions regarding the Home and the Property. These decision, among others, include: whether or not the Home (the building structure) was in or out of a Special Flood Hazard Area (SAHA) as developed by FEMA, NFIP and the County; whether or not the Home was compliant or non-compliant with the County's FDPO; whether or not special "flood vents" would need to be installed in the Home (flood vents that were a violation of the contract between Plaintiffs and the Homebuilder); and whether or not other provisions of the contract between Plaintiffs and the Homebuilder had been violated thereby rendering the Home and the Property unsuitable for Plaintiffs' purposes as contemplated and contracted for.

13.     Plaintiffs notified the Homebuilder of the apparent breaches in the construction contract pertaining to the floor elevations relative to the flood plain and non-conforming entry levels of the main floor and garage entrance. On or about August of 2003, the Homebuilder breached his contract with Plaintiffs by refusing to cure these defects in the construction of the home on the Property. As a result of that breach, Plaintiffs filed an action for breach of contract and other remedies in Madison County, Alabama, Circuit Court against the Homebuilder and other defendants. That action is still on-going and does not involve the present Defendants, James L. McElroy, Jr. and McElroy Land Surveying Company, Inc., or Madison County, Alabama, or Matthew Danner.

14.     On or about May 14, 2004, McElroy [sic] were again engaged to provide certain land surveying services for the determination of elevations of the floors of the Home and the Property relative to mean sea level and to complete and certify another "Elevation Certificate" in accordance with the rules and regulations for completing said certificate established by FEMA, NFIP, the County, and Title 18, United States Code, Section 1001.

15.     Defendants second "Elevation Certificate" issued on or about

11

May 14, 2004, is substantially and materially different from the first "Elevation Certificate" provided on or about May 28, 2003. Significantly, the minimum floor elevation of the basement is shown to be nearly three (3) feet higher than previously reported in 2003. In addition, the building type "Building Diagram Number" is incorrectly described and the Home (the building structure) is incorrectly described as being in an E Zone, (in a flood hazard zone). These and other inconsistencies are material and significant. When compared side by side, the two elevation certificates are patently ambiguous and support Plaintiffs' claims, enumerated below, of Professional Negligence, Negligent Misrepresentation, Fraudulent Misrepresentation, and Making False Statements in Violation of Title 18, United States Code, Section 1001.

16.    In August of 2004 Plaintiff [sic], shortly after these irregularities came to the attention of Plaintiffs, James Tannehill, accompanied by his former counsel, met with Defendant, James L. McElroy, Jr., at his office to discuss these elevation certificate irregularities. Defendant disclaimed any knowledge of the reason for the irregularities or responsibility for same, attributing them to the work of a former employee.

17.    On or about May 4, 2006, Plaintiffs commissioned their own survey of the Property to determine the elevations of the floors of the Home and on the Property relative to mean sea level, to determine if the Home (the building structure) is within any Special Flood Hazard Area, as previously described. The results of that survey indicate that the bottom floor elevation of the enclosed walk-out basement was even higher than either of the elevation certifications made by McElroy. Plaintiffs' survey indicates that the bottom floor of the home on the property is over three and one-half (3-1/2) feet higher than the minimum floor elevation established by locale [sic], state and federal regulations. In addition, Plaintiffs' survey indicates that the Home (the building structure) is not within any Special Flood Hazard Area. In other words, the Home on the Property could have been built in compliance with all applicable local, state and federal regulations pertaining to FEMA and NFIP flood hazard areas. In addition, the Homebuilder could have cured the defects in the Home and not breached the construction and sales

contract with Plaintiffs, thereby avoiding possible litigation in this matter.

18.    In depositions given by McElroy on February 21, 2007, the County (Madison County, Alabama) and Danner (Matthew Danner) were implicated as coconspirators in civil conspiracy to circumvent and violate the FEMA and NFIP rules and regulations, and the County's FDPO; to fraudulently misrepresent the FEMA/NFIP Elevation Certificate; and to falsify a Federal Document in violation of 18 U.S. Code, Section 1001.

19.    In 2004, James Tannehill and former counsel Patrick Miller personally met with Madison County official [sic] and counsel, and confronted them with what appeared to be significant irregularities, as described above. These Madison County representatives, declined to produce a copy of the FDPO, denied that plaintiffs had any rights under the FDPO and represented that the Home was properly identified as being in a SAHA requiring the imposition of extraordinary flood mitigation measures.

20.    The FDPO, as described in Number 7, above, has since been judicially notice [sic] in Madison County Circuit Court, by Judge Bruce Williams, on January 23, 2007.

****

Count III – Fraudulent Misrepresentation

27.    Plaintiffs hereby incorporate and adopt paragraphs 1 through 26, above, as if fully set out herein.

28.    The Alabama Court of Civil Appeals in the case of Bryant et al v. Robledo, 2005 Ala. Civ. App. LEXIS 359, 21 (Ala.Civ.App. 2005), articulated the elements of fraud, quoting the Alabama Supreme Court: "The Bryants correctly note that four elements must be proven in a fraud action: (1) false representation, (2) as to a material fact, (3) reliance on that representation, and (4) damage resulting from the reliance. Crowne

Invs., Inc. v. Bryant, 638 So. 2d 873, 876-77 (Ala. 1994)."

29.    On or about May 28, 2003, and again on May 14, 2004, Defendant James L. McElroy, Jr., in his individual, corporate and professional capacities, fraudulently misrepresented certain information on the FEMA/NFIP (Federal Emergency Management Agency/National Flood Insurance Program) "Elevation Certificate" (the "Certificate"). The Certificate was a false statement about the true conditions of the floor elevations, the type of building (Building Diagram Number), the location of the Home (the building structure) with relation to the flood zone boundary, and the source benchmark used to determine the elevations of the floors and the flood zone. Defendant issued the Certificate knowing that others would rely upon the information contained within the document for all manner of purposes, including but not limited to: compliance with local, state and federal flood damage prevention regulations; compliance with construction contracts; obtaining flood insurance coverage; and due diligence on the part of potential purchasers of property as to the true conditions of the property relative to flood hazard issues. Such a Certificate cannot possibly be issued without the requisite intent for others to rely on the information contained therein. As a result of Defendant's fraudulent misrepresentations made with the intent for others to act thereon, Plaintiffs and others relied upon these misrepresentations and were thereby induced to act to their detriment. As a direct result of Defendant's actions, Plaintiffs have been damaged.

30.    On or about May 28, 2003, and again on May 14, 2004, Defendant McElroy Land Surveying Company, Inc., in its corporate capacity, fraudulently misrepresented certain information on the FEMA/NFIP Certificate. The Certificate was a false statement about the true conditions of the floor elevations, the type of building (Building Diagram Number), the location of the building (the home) with relation to the flood zone boundary, and the source benchmark used to determine the elevations of the floors and the flood zone. Defendant issued the Certificate knowing that others would rely upon the information contained within the document for all manner of purposes, including but not limited to: compliance with local, state and federal flood damage

14

prevention regulations; compliance with construction contracts; obtaining flood insurance coverage; and due diligence on the part of potential purchasers of property as to the true conditions of the property relative to flood hazard issues. Such a Certificate cannot possibly be issued without the requisite intent for others to rely on the information contained therein. As a result of Defendant's fraudulent misrepresentations made with the intent for others to act thereon, Plaintiffs and others relied upon these misrepresentations and were thereby induced to act to their detriment. As a direct result of Defendant's actions, Plaintiffs have been damaged.

31.     During the deposition of Defendant McElroy, given on February 21, 2007, testimony was given to the effect that at the time of the issuance of the above described Elevation Certificates, the County and Danner were regularly instructing land surveyors in Madison County to falsify Elevation Certificates in violation of the FEMA/NFIP rules and regulations. In particular, to falsify Section B, Item B8, thereby placing buildings within a flood zone, when in fact they are not. Defendant McElroy blamed the County and Danner for forcing McElroy to falsify this information on the two Elevation Certificates discussed above. This constitutes a false representation as to a material fact, Plaintiffs went into reliance [sic] on this misrepresentation to their detriment and damage.

32.     On or about August 27, 2004, Defendant County fraudulently concealed from and misrepresented to plaintiff, James Tannehill, that the Madison County FDOP in effect during the period of March 2003 through August 2004 afforded Plaintiffs no right to notice or any other substantive rights with regard to their standing as potential home buyers interested in knowing of the flood hazard associated with their purchase of a Home in Madison County, that are not, in fact, within the flood zone. In addition, County Defendant fraudulently misrepresented that the Home was in a SAHA and required flood vents knowing of the lawsuit Plaintiffs had on-going with the Homebuilder. This constitutes false representations as to material facts, Plaintiffs went into reliance [sic] on these misrepresentation [sic] to their detriment and damage.

15

33.    During March of 2005, Defendant County, through attorney Jeffery Rich, fraudulently represented and passed off on Plaintiffs, through Plaintiffs' former attorney Patrick Miller, a bogus, unsigned, unauthenticated and undated document purporting to be the controlling Madison County Flood Damage Prevention Ordinance, superceding the legally adopted Ordinance of 1988 as technically amended in 1992 to correct erroneous citation as to statutory authority (See Number 7, above). Such fraudulent misrepresentation continues through the present date. This constitutes a false representation as to a material fact, Plaintiffs and their counsel went into reliance [sic] on this misrepresentation to their detriment and damage.

Count IV – Violation of Plaintiffs' Due Process Rights and<br>Deliberate Indifference of Same

34.    Plaintiffs hereby incorporate and adopt paragraphs 1 through 33, above, as if fully set out herein.

35.    Defendants, County and Danner, through their deliberate indifference to Plaintiffs' rights; their intentional and conscious omission of their duty to act, with their knowledge of the FEMA/NFIP regulations and reckless disregard of the consequences of their actions and inactions with regard to Plaintiffs' rights, as described above; have denied Plaintiffs their Civil and Due Process rights in violation of Title 42, U.S. Code, Section 1983; and Plaintiffs' Constitutional Rights under the Fifth and Fourteenth Amendments, to the United States Constitution.

Count V – Civil Conspiracy

36.    Plaintiffs hereby incorporate and adopt paragraphs 1 through 35, above, as if fully set out herein.

37.    Defendants Madison County, Matthew Danner and McElroy (corporate and individually) conspired and cooperated in circumventing and violating the FEMA/NFIP and Madison County Flood Damage Prevention Ordinance requirements so as to cause the Home at 269 River Cove Road, Huntsville, Alabama 35811, to be falsely subjected to

SAHA floodplain [sic] standards and thereby rendered unsuitable for its intended and contracted business and occupancy purposes. By such conspiracy, Plaintiffs have been damaged.

(Amended Compl. pp. 2-9.)

## III.   ANALYSIS

### A.   The Motion to Dismiss Is Not Barred.

The plaintiffs argue that the motion to dismiss should be deemed untimely filed, as allegedly having been filed after these defendants had already filed an answer to the amended complaint.   The plaintiffs' argument boils down to their reading of one line from one letter sent by Mr. Rich, counsel for the county defendants.   The plaintiffs' motion is not supported by the express language of the answer at issue, or the record as a whole.

The plaintiffs allege that:

5.      On April 5, 2007, Attorney Brinkley filed an answer to the First Amended Complaint generally admitting and denying numbered paragraphs for McElroy. In addition, Brinkley included in the "Answer to First Amended Complaint" six (6) "Affirmative Defenses" that clearly related and were directed to answering claims against Madison County and Danner, not McElroy (see Court Document 21).

6.      On May 9, 2007, a month after accepting service of summons and amended complaint, Madison County Defendants filed a Motion to Dismiss and Brief in Support attempting to raise additional affirmative defenses (see Court Documents 28 & 29). Rich then, on May 10, 2007, sent a letter to Plaintiffs' and McElroys' counsel acknowledging that he

was the attorney for Madison County and Danner and that:

> …Allen [Brinkley] recently [April 5, 2007][3] filed a
> response to the plaintiffs' Amended Complaint on behalf
> of Madison County and Matthew Danner. (See Exhibit B)

The Docket in this case reflects that the only recent filing by Brinkley
was the Answer to the Amended Complaint containing the six (6)
affirmative defenses filed on April 5, 2007, which, by Rich's own
words, was filed "on behalf of Madison County and Matthew Danner."
It is further evident from Rich's letter that as of April 5, 2007, the date
Brinkley filed the Answer, Rich was in fact representing Madison
County and Danner and had agreed that Brinkley would file an answer
to the Amended Complaint for Madison County and Danner. Rich
would then, on April 10, 2007, frustrate Plaintiffs' efforts to make
service by disclaiming authority to receive service on behalf of Madison
County and Matthew Danner, knowing that he was in fact representing
them, thereby delaying service, duplicating service and inflicting
additional legal costs on plaintiffs.

(Pl. Opp. Br. 4-5.)

A review of the record demonstrates that the answer to which the plaintiffs

refer was actually filed on April 6, 2007.  (Doc. 21.)  By its terms, it was filed

specifically on behalf of "[d]efendants James L. McElroy, Jr. and McElroy Land

Surveying Company, Inc."  The county defendants are mentioned nowhere in that

document.

Further, in answer to Count Four,  a count specifically directed at only the

---

[3]  This date was inserted in the original quote by plaintiffs' counsel.  It has been included here in
order to represent the actual quote from the plaintiffs' brief.  However, the date represents only the
plaintiffs' <u>opinion</u> as to what Mr. Rich meant when he used the word "recently".

county defendants, the answer states: "Paragraphs 34 and 35 of Plaintiffs' Amended Complaint require no response by McElroy." (Doc. 21.) If this answer had been filed on behalf of the county defendants, it certainly would have addressed a count specific to only those defendants.[4]

Further, even if the answer could be fairly attributed to these defendants, when a motion to dismiss is filed after an answer, the proper procedure is to simply treat the motion as one for judgment on the pleadings. *See Pfister v. Arceneaux,* 376 F.2d 821, 822 -823 (5th Cir. 1966) ("The third party defendants' motion to dismiss was incorporated in their answer, and therefore may not be viewed as a motion under Rule 12(b) of the Federal Rules of Civil Procedure. Rule 12(b) provides that any defenses presented by motion 'shall be made before pleading * * *.' The motion must, therefore, be taken as a motion for judgment on the pleadings."). Further, the rules provide that a defense of failure to state a claim upon which relief can be granted may

---

[4] Defense counsel states that the quote from his May 10, 2007, letter contains a typographical error, and that the word "I" should be read in lieu of the name "Allen". The quote would then become:

I recently filed a response to the plaintiffs' Amended Complaint on behalf of Madison County and Matthew Danner.

This reading makes more sense when viewed in light of the record as a whole. The day before Mr. Rich sent this letter, he had filed the instant motion to dismiss on behalf of the county defendants and Matthew Danner. However, the court does not base any part of its decision on this letter, or the representations of defense counsel regarding same. Instead, the court has considered only the literal language of the answer at issue.

19

be made by a motion for judgment on the pleadings.  Fed. R. Civ. P. 12 (h)(2)(B).[5]

The motion is properly considered.

Further, there is no need to convert the motion to a motion for summary judgment as the plaintiff suggests.  The court has considered no document outside the pleadings in making its decision.

### B.     The Plaintiffs' Amended Complaint Fails to Comply with Applicable Pleading Requirements.

The county defendants first argue that the plaintiffs have failed to plead a number of their claims with the specificity required under the rules.  The plaintiffs do not respond to this argument.[6]

### 1.     The Plaintiffs' "Fraudulent Misrepresentation" Claim Does Not Contain the Specificity Required by Rule 9 of the Federal

---

[5]  The court notes that the applicable standard of review is the same, whether the motion is to dismiss, or for judgment on the pleadings.  "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts. *See Bankers Ins. Co. v. Florida Residential Property and Cas. Joint Underwriting Ass'n,* 137 F.3d 1293, 1295 (11th Cir.1998) (citing *Hebert Abstract Co. v. Touchstone Properties, Ltd.,* 914 F.2d 74, 76 (5th Cir.1990)); *see also* Rule 12(c), Fed.R.Civ.P. When we review a judgment on the pleadings, therefore, we accept the facts in the complaint as true and we view them in the light most favorable to the nonmoving party. *See Ortega,* 85 F.3d at 1524 (citing *Swerdloff v. Miami Nat'l Bank,* 584 F.2d 54, 57 (5th Cir.1978)). The complaint may not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Slagle,* 102 F.3d at 497 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957) & citing *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 811, 113 S.Ct. 2891, 2916-17, 125 L.Ed.2d 612 (1993))."  *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

[6]The instant motion is a reinstated motion to dismiss.  For CM/ECF purposes, the court instructed the county defendants to re-file their motion and include a reference to all documents filed in support of, and against the original motion to dismiss.  Document 28 makes said reference.  No objection to the reference was made by the plaintiffs.

20

**Rules of Civil Procedure.**

Rule 9(b) of the Federal Rules of Civil Procedure requires

a complaint "to state with particularity the circumstances constituting fraud." As we have previously observed,

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir.2007) (quoting *Ziemba v. Cascade In''l, Inc.*, 256 F.3d 1194, 1202 (11th Cir.2001)).

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).

> A plaintiff alleging fraud must describe "precisely what statements were made in what documents," "the time and place of each such statement and the person responsible for making ... same," and "the content of such statements."

*Bodie v. Purdue Pharma Co.*, No. 05-13834, 2007 WL 1577964 at * 11 (11th Cir. June 1, 2007)(quoting *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002)).

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not

21

making) same, and (3) the content of such statements and the manner in
which they misled the plaintiff, and (4) what the defendants obtained as
a consequence of the fraud.

*U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.,* 290 F.3d 1301, 1310 (11th

Cir. 2002) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th

Cir.2001).

Particularity means that "a plaintiff must plead 'facts as to time, place,
and substance of the defendant's alleged fraud,' specifically 'the details
of the defendant['s] allegedly fraudulent acts, when they occurred, and
who engaged in them." *Clausen*, 290 F.3d at 1310 (quoting *Cooper v.
Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 567-68 (11th
Cir.1994) (*citing Durham v. Bus. Mgmt. Assoc.*, 847 F.2d 1505 (11th
Cir.1988))).

*U.S. ex el. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006).

Count Three of the First Amended Complaint sets out the fraud allegations

against the county defendants.  Paragraphs 29 and 30 only concern misrepresentations

of the non-county defendants.  Paragraph 31 addresses the county defendants and

reads:

31.    During the deposition of Defendant McElroy, given on February
21, 2007, testimony was given to the effect that at the time of the
issuance of the above described Elevation Certificates, the County and
Danner were regularly instructing land surveyors in Madison County to
falsify Elevation Certificates in violation of the FEMA/NFIP rules and
regulations. In particular, to falsify Section B, Item B8, thereby placing
buildings within a flood zone, when in fact they are not. Defendant
McElroy blamed the County and Danner for forcing McElroy to falsify
this information on the two Elevation Certificates discussed above. This

22

constitutes a false representation as to a material fact, Plaintiffs went into reliance on this misrepresentation to their detriment and damage.

(Am. Compl.)  Paragraph 31 contains no allegation that Danner or the county made any representations to the plaintiffs, only that Danner and the county were instructing land surveyors to make false representations.  Further, the complaint does not allege either an agency or respondeat superior relationship so as to make Danner or the county responsible for the representations made by the surveyors to the plaintiffs.

The allegations in paragraph 32 are also deficient to state a maintainable claim. That paragraph reads:

> 32.    On or about August 27, 2004, Defendant County fraudulently concealed from and misrepresented to plaintiff, James Tannehill, that the Madison County FDOP in effect during the period of March 2003 through August 2004 afforded Plaintiffs no right to notice or any other substantive rights with regard to their standing as potential home buyers interested in knowing of the flood hazard associated with their purchase of a Home in Madison County, that are [sic] not, in fact, within the flood zone. In addition, County Defendant fraudulently misrepresented that the Home was in a SAHA and required flood vents knowing of the lawsuit Plaintiffs had on-going with the Homebuilder. This constitutes false representations as to material facts, Plaintiffs went into reliance on these misrepresentation [sic] to their detriment and damage.

(Am. Compl.)  No specific person is named as having made the representations at issue in this paragraph--the plaintiffs refer only to "Defendant County" and "County Defendant".  Further, this paragraph does not state how the plaintiffs relied on the misrepresentation, or how the plaintiffs were damaged by the misrepresentation.

23

Paragraph 33 reads:

> 33.    During March of 2005, Defendant County, through attorney
> Jeffery Rich, fraudulently represented and passed off on Plaintiffs,
> through Plaintiffs' former attorney Patrick Miller, a bogus, unsigned,
> unauthenticated and undated document purporting to be the controlling
> Madison County Flood Damage Prevention Ordinance, superceding the
> legally adopted Ordinance of 1988 as technically amended in 1992 to
> correct erroneous citation as to statutory authority (See Number 7,
> above). Such fraudulent misrepresentation continues through the present
> date. This constitutes a false representation as to a material fact,
> Plaintiffs and their counsel went into reliance [sic] on this
> misrepresentation to their detriment and damage.

(Am. Compl.) The complaint alleges that counsel "passed off on Plaintiffs" "a bogus

unsigned, unauthenticated and undated document purporting to be the controlling

Madison County Flood Damage Prevention Ordinance."   This language does not

state exactly what the particular misrepresentation was, or just what the phrase

"passed off" or "bogus" means in this context.  If the plaintiffs are complaining that

the County's attorney misrepresented the law in effect, then they are alleging a

misrepresentation as to a legal conclusion -- that the ordinance was in effect -- and

thus do not make out a claim for "fraud," which requires a misrepresentation of

"fact".  Further, the fact that any such misrepresentation was made to plaintiffs'

former counsel would eliminate any reasonable reliance, as the plaintiffs' counsel

should have known that any such representation was false.  Finally, plaintiffs fail to

allege how they relied on the purported misrepresentations, or how they were

24

damaged by such reliance.

As to the defendants Madison County and Danner, Count Three has not been alleged with sufficient particularity.  That count is due to be dismissed as to these defendants.

### 2.   The Plaintiffs' Section 1983 Claims Are Not Alleged With the Required Specificity.

The county defendants next contend that the constitutional violations asserted pursuant to 42 U.S.C. § 1983 (Count Four) against the county defendants are not alleged with requisite detail and do not state maintainable claims.

As stated above in Section II. C. herein, Section 1983 claims against persons who may be entitled to qualified immunity must be pled with specificity.  A county is not a person entitled to qualified immunity.  Thus, there is no heightened pleading standard as to plaintiffs' Section 1983 claims against the county. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166-167 (1993).  However, such requirement does potentially exist as to such claims against Danner in his individual capacity, and, therefore, the court will consider whether plaintiffs' Section 1983 claims meet this requirement as to him.

Plaintiffs' Amended Complaint does not comply with the Eleventh Circuit's "heightened pleading requirement" for Section 1983 actions.  All of the plaintiffs'

25

Section 1983 allegations are contained in paragraph 35 which reads:

> 35.   Defendants, County and Danner, through their deliberate indifference to Plaintiffs' rights; their intentional and conscious omission of their duty to act, with the knowledge of the FEMA/NFIP regulations and reckless disregard of the consequences of their actions and inactions with regard to Plaintiffs' rights, as described above; have denied Plaintiffs their Civil and Due Process rights in violation of Title 42, U.S. Code, Section 1983; and Plaintiffs' Constitutional Rights under the Fifth and Fourteenth Amendments, to the United States Constitution.

(Am. Compl.)  This paragraph is not specific enough to maintain a claim under Section 1983.  It contains no allegation that the conduct in question violates the plaintiffs' clearly established rights, much less facts to that effect.  The plaintiffs' Section 1983 claims, contained in Count Four of the First Amended Complaint, are due to be dismissed as to defendant Danner.[7]

### C.   Part of the Plaintiffs' Fraudulent Misrepresentation Claim Is Also Barred by the Applicable Statute of Limitations.

The court has already determined that the fraudulent misrepresentation claims (Count Three) against the county defendants are due to be dismissed because they lack specificity.  However, the defendants also argue that the plaintiffs' fraud claims

---

[7]Even if the Section 1983 claim had been more specific, to the extent it alleges a Fifth Amendment violation it is due to be dismissed because there is no allegation of federal involvement in the deprivation of the plaintiffs' rights.  *See Dusenbery v. U.S.*, 534 U.S. 161 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without "due process of law.")  Because the court has found that the Section 1983 claims are due to be dismissed on other grounds, it has not analyzed whether the plaintiff has made out a proper claim under the Fourteenth Amendment.

are barred by the applicable statute of limitations.  The plaintiffs do not respond to this argument.

As to the claims asserted against the county defendants, plaintiffs contend that certain fraudulent misrepresentations were made in May 2003, May 2004, August 2004 and March 2005.  (*Id.* at 30, 31, 32, 33.)  The complaint alleges that the conduct which occurred in May of 2003 and May of 2004 (paragraphs 30 and 31) was not discovered until 2007.  However, there is no such allegation as to the August 2004 and March 2005 conduct (paragraphs 32 and 33).  Accordingly, as to this conduct, even if these fraud claims were not due to be dismissed because they were not stated with sufficient particularity, they occurred more than two years prior to the filing of the First Amended Complaint.  The conduct alleged in paragraphs 32 and 33 of the First Amended Complaint is barred by the two-year statute of limitations governing such actions.  See Ala. Code § 6-2-38(l) (1975).

## D.    The Plaintiffs' Section 1983 Claims Are Also Barred by the Applicable Statute of Limitations.

The defendants argue that the plaintiffs' Section 1983 claims are barred by the applicable statute of limitations.  Again, the plaintiffs make no argument in response.

Actions brought in this court pursuant to 42 U.S.C. § 1983, are subject to the Alabama two-year personal injury statute of limitation found in Ala. Code 1975, §

6-2-38. *See, e.g., Hughes v. Lott*, 350 F.3d 1157, 1163 (2003).  On April 5, 2007, the county defendants were first added and the section 1983 claims were first made. Accordingly, any claim by plaintiffs under 42 U.S.C. § 1983 based on acts or events occurring more than two years prior to April 5, 2007, is time barred as to these defendants.[8]

The plaintiffs knew of any alleged constitutional violation by 2004.  (See doc. no. 20, ¶¶ 16, 19, 29-33.)  The only facts which are alleged to have occurred <u>after</u> April 5, 2005 (the date before which claims are time-barred) is the May 4, 2006, survey commissioned by the plaintiffs.  All of the conduct of the county defendants is alleged to have occurred prior to April 5, 2005.  Further, facts which would support a cause of action were apparent to plaintiffs by at least August 2004, and the plaintiffs' Section 1983 claims accrued over two years prior to the filing of the Amended Complaint.  The plaintiffs' Section 1983 claims are time-barred and due to be dismissed.

### E.    Plaintiffs' Section 1983 Claims Against the County are Also Barred by *Monell v. New York Department of Social Services*, 436 U.S. 658, 690 (1978).

Section 1983 provides:

---

[8]The amendment does not relate back to the original complaint under Rule 15 of the Federal Rules of Civil Procedure because the county defendants were not sued in the original complaint, nor were the section 1983 claims made in the original complaint.  *See Fed. R. Civ. P.*  15(c).

> Every <u>person</u> who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C.A. § 1983 (emphasis added).  The United States Supreme Court has held that "municipalities and other bodies of local government are 'persons' within the meaning of Section 1983.  Such a body may therefore be sued directly if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation or decision officially adopted and promulgated by that bodies' officers.'"  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (quoting *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690 (1978)).  Further, the County may not incur liability merely through the actions of its agents.  *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).

The defendants argue that no such policy has been alleged by the plaintiffs. The plaintiffs have neither alleged, nor shown in response to the motion to dismiss, that any constitutional violation was based on a policy or custom of the county.  *See id.* ("[I]t is when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury that the government as an entity is responsible under §

1983."). Because the plaintiffs fail to allege any policy, custom, practice or

procedure, the plaintiffs' Section 1983 claims are due to be dismissed as to the county

defendants.

### F.      Danner is Entitled to Qualified Immunity.

>       Qualified immunity shields a Section 1983 defendant from
> liability for harms arising from discretionary acts, as long as the
> discretionary acts do not violate "clearly established federal statutory or
> constitutional rights of which a reasonable person would have known."
> *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow*, 457 U.S. at
> 818); *Case*, 555 F.3d at 1327; *Draper v. Reynolds*, 369 F.3d 1270, 1275
> (11th Cir.2004).

*Daniels v. City of Hartford, Ala.*, No. 1:08-CV-668, 2009 WL 2512853, *8 (M.D.

Ala. August 18, 2009).

>       To receive qualified immunity, "the public official must first
> prove that he was acting within the scope of his discretionary authority
> when the allegedly wrongful acts occurred." *Id.* (internal quotation
> marks omitted). . . . "Once the defendant establishes that he was acting
> within his discretionary authority, the burden shifts to the plaintiff to
> show that qualified immunity is not appropriate." *Id.*

*Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003).

Danner's conduct, as alleged in the Amended Complaint, is discretionary. The

Eleventh Circuit Court of Appeals has stated the law as follows:

Instead of focusing on whether the acts in question involved the exercise of actual discretion, we assess whether they are of a type that fell within the employee's job responsibilities. Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. See *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n. 17 (11th Cir.1994) ("A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority." (emphasis added)).

One might reasonably believe that violating someone's constitutional rights is never a legitimate job-related function or within the scope of a government official's authority or power. As we explained in *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir.1998) (quotation marks and citation omitted), however, "the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology." In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances.

Consider the first prong of the test--whether the official is engaged in a legitimate job-related function. In *Sims v. Metropolitan Dade County*, 972 F.2d 1230 (11th Cir.1992), "we did not ask whether it was within the defendant's authority to suspend an employee for an improper reason; instead, we asked whether [the defendant's] discretionary duties included the administration of discipline." *Harbert*, 157 F.3d at 1282. Similarly, in assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures in general is a part of his job-related powers and responsibilities. *See, e.g., Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir.1997). Put another way, to

31

pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description.

Of course, we must be sure not to characterize and assess the defendant's act at too high a level of generality. Nearly every act performed by a government employee can be described, in general terms, as ostensibly "furthering the public interest." If we jump to such a high level of abstraction, it becomes impossible to determine whether the employee was truly acting within the proper scope of his job-related activities. Consequently, we consider a government official's actions at the minimum level of generality necessary to remove the constitutional taint. In considering whether an act of allegedly excessive force fell within a police officer's duties, for example, we do not ask whether police have the right to use excessive force. We also do not immediately jump to a high level of generality and ask whether police are responsible for enforcing the law or promoting the public interest. We instead ask whether they have the power to attempt to effectuate arrests. *See, e.g., Ferraro*, 284 F.3d at 1194 (holding, in an excessive force suit, "there can be no doubt that [the police officer defendant] was acting in his discretionary capacity when he arrested [plaintiff]").

After determining that an official is engaged in a legitimate job-related function, it is then necessary to turn to the second prong of the test and determine whether he is executing that job-related function--that is, pursuing his job-related goals--in an authorized manner. The primary purpose of the qualified immunity doctrine is to allow government employees to enjoy a degree of protection only when exercising powers that legitimately form a part of their jobs. *See, e.g., Harlow*, 457 U.S. at 819 & n. 34, 102 S.Ct. at 2739 & n. 34 (limiting the availability of qualified immunity to situations where "an official's duties legitimately require action" and to "actions within the scope of an official's duties"). Each government employee is given only a certain "arsenal" of powers with which to accomplish her goals. For example, it is not within a teacher's official powers to sign her students up for the Army to promote patriotism or civic virtue, or to compel them to bring

their property to school to redistribute their wealth to the poor so that they can have firsthand experience with altruism.

Employment by a local, county, state, or federal government is not a carte blanche invitation to push the envelope and tackle matters far beyond one's job description or achieve one's official goals through unauthorized means. Pursuing a job-related goal through means that fall outside the range of discretion that comes with an employee's job is not protected by qualified immunity.

*Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 -1267 (11th Cir. 2004).

The Amended Complaint sets out that "Matthew Danner, although an employee of Madison County, is not the Madison County Engineer, but has assumed responsibility for the administration and implementation of the Ordinance. (Doc. 20, p. 3.) All of the actions alleged to have been taken by Danner fell within his responsibility to administer and implement the ordinance at issue in this case, and he therefore was acting within the scope of his discretionary authority. The burden therefore shifts to plaintiffs to show that Danner "violated clearly established law based upon objective standards." *Eubanks v. Gerwen*, 40 F.3d 1157, 1160 (11th Cir. 1994).

The plaintiffs have not alleged in their Amended Complaint, nor have they argued in their brief, any case decided by the United States Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court, which demonstrates that Danner undertook any action which violated plaintiffs' clearly established constitutional

rights, nor does the "official's conduct lie[] so obviously at the very core of what the [law] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir. 1997).  Because the plaintiffs have not satisfied their burden, Danner is entitled to qualified immunity as a matter of law.  Accordingly, the Section 1983 claims against Danner are due to be dismissed.

## IV.  CONCLUSION

Based on the foregoing, the motion to dismiss is hereby **GRANTED**.  All counts of the First Amended Complaint, except Count Five[9], are hereby **DISMISSED**, with prejudice, as to Madison County and Matthew Danner. An appropriate order will be entered.

**DONE** this the 15th day of October, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[9] Although the County Defendants, in their original motion to dismiss, moved to dismiss the civil conspiracy claim (Count Five) they make no argument regarding that count in their briefs.  The argument that the conspiracy claim should be dismissed is therefore deemed to be abandoned.  *See Dalrymple v. U.S.* 460 F. 3d 1318, 1324 n. 6 (11th Cir. 2006) (issue deemed abandoned if, after careful review of the initial brief, it is determined that a party failed to raise the issue sufficiently for discussion).